**IN THE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

INDIANA CIVIL LIBERTIES
UNION, *et al.*,

     *Plaintiffs,*

v.

MIKE BRAUN,

     *Defendant.*

No. 1:00-cv-00811-SEB-VSS

**BRIEF OF AMICUS CURIAE THE FRATERNAL ORDER OF EAGLES
IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM THE
<u>FINAL JUDGMENT AND PERMANENT INJUNCTION</u>**

MORIAH O'HARE\*
FIRST LIBERTY INSTITUTE
1331 Penn. Ave. NW, Ste 1410
Washington, DC 20004
Phone: (202) 921-4105
Fax: (972) 578-7865
mohare@firstliberty.org
\**Supervised by D.C. bar member*

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST OF *AMICUS CURIAE* .................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 2

ARGUMENT ...................................................................................................................... 3

I.      Religious Themes Have Infused Our Nation's History and Traditions from the Beginning. ................................................................................... 3

II.     Ten Commandments Monuments on State Grounds Are Part of the Tradition of Public Ten Commandments Displays That Dates Back More Than 125 Years. ..................................................................................... 6

III.    The State's Monument Is Lawful Under the Supreme Court's Mandated History and Tradition Standard. .................................................... 10

CONCLUSION ................................................................................................................. 12

CERTIFICATE OF SERVICE ......................................................................................... 13

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Legion v. Am. Humanist Ass'n,*
  588 U.S. 29 (2019) ..................................................................3, 6, 10, 12

*Freedom From Religion Found., Inc. v. Mack,*
  49 F.4th 941 (5th Cir. 2022) ................................................................ 10

*Groff v. DeJoy,*
  600 U.S. 447 (2023) ............................................................................. 10

*Ind. Civil Liberties Union Inc. v. O'Bannon,*
  110 F. Supp. 2d 842 (S.D. Ind. 2000) ................................................. 10

*Ind. Civil Liberties Union Inc. v. O'Bannon,*
  259 F.3d 766 (7th Cir. 2001) ............................................................... 10

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) ..................................................................3, 10, 11

*Lemon v. Kurtzman,*
  403 U.S. 602 (1971) .......................................................................... 2, 10

*Lynch v. Donnelly,*
  465 U.S. 668 (1984) ........................................................................... 3, 4

*Marsh v. Chambers,*
  463 U.S. 783 (1983) .............................................................................. 4

*Shurtleff v. City of Boston,*
  596 U.S. 243 (2022) ............................................................................. 11

*St. Augustine Sch. v. Underly,*
  78 F.4th 349 (7th Cir. 2023) ............................................................... 10

*Town of Greece v. Galloway,*
  572 U.S. 565 (2014) ........................................................................... 4, 9

*Van Orden v. Perry,*
  545 U.S. 677 (2005) .......................................................................passim

**Statutes**

31 U.S.C. § 5112 ...................................................................................... 5

31 U.S.C. § 5114 ................................................................................................................. 5

36 U.S.C. § 186 .................................................................................................................. 5

**Other Authorities**

Ala. Code § 1-2-5 (2024)..................................................................................................... 5

Brief for United States as Amicus Curiae, *Van Orden v. Perry*,
545 U.S. 677 (2005) (No. 03-1500), 2005 WL 263790 .................................... 7, 8

Brief for WallBuilders, Inc. as Amicus Curiae, *McCreary Cnty. v. ACLU*,
545 U.S. 844 (2005) (No. 03-1693)........................................................................ 7

Clare Mulroy, State mottos across America: Full list of the slogans for all 50
states and DC, USAToday (Mar. 5, 2023),
https://www.usatoday.com/story/news/2023/03/05/official-state-mottos-
list-united-states/11068473002/ ............................................................................ 5

First Supplemental Expert Report Submitted in *Cave v. Thurston*,
No. 4:18-cv-00342-KGB, 2021 WL 4936185 (E.D. Ark. Oct. 22, 2021)
(ECF No. 260-3) (Nov. 18, 2019).................................................................... 2, 9

Fla. Dep't of State, State Flag, https://dos.fl.gov/florida-facts/florida-state-
symbols/state-flag/ (last visited Dec. 4, 2025) ..................................................... 5

Kristine Parks, *Ten Commandments monument returns to Kentucky state
Capitol grounds after 40 years*, FoxNews (Dec. 18, 2025)................................ 8

Md. Sec'y of State, Maryland Flag Protocol - Description and Care,
https://sos.maryland.gov/pages/maryland-flag-protocol-description-and-
care.aspx (last visited Dec. 4, 2025) ..................................................................... 5

Miss. Code Ann. § 3-3-16(1) (2025).................................................................................. 5

N.M. Sec'y of State, About New Mexico, State Flag,
https://www.sos.nm.gov/about-new-mexico/state-flag/
(last visited Dec. 4, 2025) ..................................................................................... 5

Rein Fertel, *Louisiana State Flag*, 64 Parishes (Mar. 23, 2024),
https://64parishes.org/entry/louisiana-state-flag.............................................. 5

Second Continental Congress Nov. 1, 1777 Thanksgiving Proclamation.................... 3

Steven K. Green's Report in *Cave v. Thurston*, No. 4:18-cv-00342-KGB,
2021 WL 4936185 (E.D. Ark. Oct. 22, 2021)
(ECF No. 260-49) (Jan. 24, 2020) ........................................................................ 8

iii

Val Brinkerhoff, The Symbolism of the Beehive in Latter-day Saint Tradition, https://byustudies.byu.edu/article/the-symbolism-of-the-beehive-in-latter-day-saint-tradition (last visited Nov. 11, 2025)....................................... 5

## INTEREST OF *AMICUS CURIAE*[1]

Founded in 1898, the Fraternal Order of Eagles is an international non-profit organization united fraternally in the spirit of liberty, truth, justice, and equality, to make human life more desirable by lessening its ills and promoting peace, prosperity, and hope.  An active force for social good, the Eagles served as the driving force behind Social Security, and they also created the $25 million Fraternal Order of Eagles Diabetes Research Center at the University of Iowa, founded Mothers Day, and helped end age-based job discrimination with the "Jobs After 40" program.  Today the Eagles continue to work for the good of their fellow man, including fundraising for major charities that combat kidney disease, heart disease, diabetes, cancer, spinal cord injuries, and that help children.

During the Eagles' 1954 Grand Aerie Convention Proceedings, the Youth Guidance Committee determined that there existed a nationwide problem of juvenile delinquency and juvenile crime.  The Eagles desired to inspire the nation's youth to put their efforts toward the common good just as former generations had championed social security and social justice. It was decided that the Eagles engage in a program to acknowledge the historical impact of the Ten Commandments on the development of Western legal tradition and, through reminding the public of this historical fact, inspire the nation's youth to live law-abiding and productive lives.

---

[1] Counsel for *Amicus Curiae* authored this brief in its entirety.  No party's counsel authored this brief, in whole or in part.  No party or party's counsel contributed any money that was intended to fund the preparation or submission of this brief.  No person—other than *Amicus Curiae*, their members, or their counsel—contributed money that was intended to fund the preparation or submission of this brief.

Over the course of the campaign the Eagles donated over 100 monuments inscribed with the Ten Commandments to state and local governments across the country, using a version of the commandments produced by a group of Jewish, Protestant and Catholic leaders.  Most of them stand to this day.  First Supplemental Expert Report Submitted in *Cave v. Thurston*, No. 4:18-cv-00342-KGB, 2021 WL 4936185 (E.D. Ark. Oct. 22, 2021) (ECF No. 260-3), at *48-58 (Nov. 18, 2019).  Among these donations was a Ten Commandments monument placed on the Statehouse lawn in Indianapolis in 1958.  It stood there for over three decades until it was vandalized and removed in 1991.  The monument at issue in this case is its replacement.

The Eagles seek to preserve these monuments and others like them as part of its continuing efforts to work for the good of the nation's youth.  This includes restoring or replacing its Ten Commandments monuments removed or barred from public property under the now defunct *Lemon v. Kurtzman*, 403 U.S. 602 (1971), and its progeny.

## INTRODUCTION AND SUMMARY OF ARGUMENT

For more than two centuries, the Supreme Court has recognized that references to the divine and displays of religious symbols have coexisted harmoniously with the principles of the First Amendment.  The Ten Commandments, in particular, have long been acknowledged as part of the Nation's legal and cultural foundation.  Unsurprisingly, public displays of the Ten Commandments occupy a prominent place in America's civic and moral tradition, from their depiction in the Supreme Court's own marble friezes to monuments and displays at state capitols and

2

local courthouses.  The monument at issue in this case ("the Monument")—which simply depicts the Ten Commandments alongside two other historical documents— falls squarely within that enduring historical tradition.

Since *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534-36 (2022), the Supreme Court has mandated a history and tradition analysis for Establishment Clause matters, which means that "the Establishment Clause must be interpreted by reference to historical practices and understandings." The Monument fits comfortably within this rubric of history and tradition. As such, the Establishment Clause supports the Monument's placement on the Statehouse grounds. In fact, it affords the Monument "a strong presumption of constitutionality." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 57 (2019).

### ARGUMENT

### I.   Religious Themes Have Infused Our Nation's History and Traditions from the Beginning.

"There is an unbroken history of official acknowledgement by all three branches of government of the role of religion in American life from at least 1789." *Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984)).  Starting in the early colonial period, "a day of Thanksgiving was celebrated as a religious holiday to give thanks for the bounties of Nature as gifts from God." *Lynch*, 465 U.S. at 675.  The Second Continental Congress[2] and President

---

[2] The Second Continental Congress's Nov. 1, 1777 Thanksgiving Proclamation from the Library of Congress can be found at https://www.loc.gov/resource/rbpe.04001400/?st=pdf.

George Washington continued that early tradition of proclaiming a day of thanksgiving "with all its religious overtones, [to be] a day of national celebration." *Id.* In the intervening centuries, "'forthrightly religious' Thanksgiving proclamations [have been] issued by nearly every President since Washington." *Town of Greece v. Galloway*, 572 U.S. 565, 580 (2014) (quoting *County of Allegheny v. ACLU*, 492 U.S. 573, 671 (1989) (Kennedy, J., concurring in part and dissenting in part)).

Similar too is the nation's "unambiguous and unbroken history of more than 200 years" of opening legislative sessions with prayer. *Town of Greece*, 572 U.S. at 576 (quoting *Marsh v. Chambers*, 463 U.S. 783, 792 (1983)). One of the first orders of business of the First Continental Congress was to appoint a chaplain to lead it in prayer. *See Marsh v. Chambers*, 463 U.S. 783, 787 (1983) (citing 1 J. of the Continental Cong. 26 (1774)). The First Congress continued the practice "and both the House and Senate have [appointed official chaplains] virtually uninterrupted since that time." *Town of Greece*, 572 U.S. at 576. In light of that historical pedigree, "there can be no doubt," the Supreme Court noted, "that the practice of opening legislative sessions with a prayer has become part of the fabric of our society." *Id.* The same goes for the judiciary, where proceedings traditionally begin "with an announcement that conclude[s], 'God Save the United States and this Honorable Court.'" *Marsh*, 463 U.S. at 786.

Emblems of government authority such as flags, mottos, and seals routinely incorporate plainly religious iconography and references.[3]  Federal law codifies "In God We Trust" as our national motto, 36 U.S.C. § 186, and mandates its feature on the Nation's currency, 31 U.S.C. §§ 5112(d)(1), 5114(b).  Americans across the country routinely recite the Pledge of Allegiance to the American flag at official and unofficial functions, declaring their allegiance to "one nation under God."   Our Nation's

---

[3] Alabama's and Florida's state flags feature a Cross of Saint Andrew, so named for Andrew the Apostle believed to have been crucified on an X-shaped cross.  Ala. Code § 1-2-5 (2024); Fla. Dep't of State, State Flag, https://dos.fl.gov/florida-facts/florida-state-symbols/state-flag/ (last visited Dec. 4, 2025).  Louisiana's state flag and seal features a pelican piercing her own breast to feed her young, which symbolizes the self-sacrifice of Jesus to early Christians.  Rein Fertel, *Louisiana State Flag*, 64 Parishes (Mar. 23, 2024), https://64parishes.org/entry/louisiana-state-flag. Maryland's state flag includes crosses in two of its four quadrants.  Md. Sec'y of State, Maryland Flag Protocol - Description and Care, https://sos.maryland.gov/pages/maryland-flag-protocol-description-and-care.aspx (last visited Dec. 4, 2025).  Mississippi's state flag invokes God directly with the words "In God We Trust."  Miss. Code Ann. § 3-3-16(1) (2025).  New Mexico's state flag use of a red "Zia" embraces Native American religious symbolism.  N.M. Sec'y of State, About New Mexico, State Flag, https://www.sos.nm.gov/about-new-mexico/state-flag/ (last visited Dec. 4, 2025).  Utah's state flag includes beehive, "one of the most common and enduring symbols of within Mormonism" representing "the kingdom of God."  Val Brinkerhoff, The Symbolism of the Beehive in Latter-day Saint Tradition, https://byustudies.byu.edu/article/the-symbolism-of-the-beehive-in-latter-day-saint-tradition (last visited Nov. 11, 2025).

States have adopted mottos and seals that incorporate plainly religious references.  Arizona: "Ditat Deus" (meaning "God enriches"); Colorado: "Nil Sine Numine" (meaning "Nothing without providence or deity");  Connecticut: "Qui Transtulit Sustinet" (meaning "He who transplanted still sustains"); Florida: "In God We Trust"; Hawaii: "Ua mau ke ea o ka aina i ka pono" (meaning "The life of the land is perpetuated in righteousness"); Kentucky: "Deo gratiam habeamus" (meaning "Let us be grateful to God"); Ohio: "With God, All Things Are Possible"; and South Dakota: "Under God the People Rule." *See* Clare Mulroy, State mottos across America: Full list of the slogans for all 50 states and DC, USATODAY (Mar. 5, 2023), https://www.usatoday.com/story/news/2023/03/05/official-state-mottos-list-united-states/11068473002/.

monuments[4] and memorials[5] feature overt religious symbols, and our museums[6] curate masterpieces with singular religious importance and meaning.  And in the National Statuary Hall, religious leaders stand prominently in the seat of our nation's legislature.  *Am. Legion,* 588 U.S. at 59 (listing examples of the "variety of religious figures" in the Hall).

Few traditions, however, are older and none is more ubiquitous than public displays of the Ten Commandments.

## II.    Ten Commandments Monuments on State Grounds Are Part of the Tradition of Public Ten Commandments Displays That Dates Back More Than 125 Years.

Government displays that "acknowledge[] . . . the role played by the Ten Commandments in our Nation's heritage are common throughout America."  *Van Orden,* 545 U.S. at 688.  The tradition dates back more than 125 years.  *See id.* at 689 (observing that since 1897 "a large statue of Moses holding the Ten Commandments, alongside a statue of the Apostle Paul, has overlooked the rotunda of the Library of Congress' Jefferson Building").  These acknowledgments appear prominently upon the Nation's most significant edifices, on the grounds of state capitols, and on the grounds of local courthouses and municipal buildings across the country.  At the Supreme Court, for example, a seated Moses reveals the Ten Commandments atop

---

[4] "The apex of the Washington Monument is inscribed with 'Laus Deo,'" which translates to "Praise be to God[.]"  *Van Orden,* 545 U.S. at 689 n.9.

[5] "[T]he Washington, Jefferson, and Lincoln Memorials all contain explicit invocations of God's importance."  *Van Orden,* 545 U.S. at 689 n.9.

[6] "A medallion with two tablets depicting the Ten Commandments decorates the floor of the National Archives."  *Van Orden,* 545 U.S. at 689; *see Am. Legion,* 588 U.S. at 88 (Gorsuch, J., concurring).

the East Pediment in brilliant marble.[7]  *See Van Orden*, 545 U.S. at 688.  Inside, Moses has watched over the proceedings from the South Frieze since construction of the Supreme Court was completed in 1935.[8]  The Ten Commandments "adorn the metal gates lining the north and south sides of the Courtroom as well as the doors leading into the Courtroom."  *Van* Orden, 545 U.S. at 688. Visitors to the Capital encounter Moses and the Ten Commandments in the Chamber of the United States House of Representatives, in the National Archives, in the rotunda of the Library of Congress' Jefferson Building, and in the Department of Justice, to name just a few locations.  *Id.* at 689.

Similar displays of comparable pedigree have been identified in public buildings in almost every state of the Union.  *See* Brief for United States as Amicus Curiae Supporting Respondents, *Van Orden v. Perry*, 545 U.S. 677 (2005) (No. 03-1500), 2005 WL 263790, at *11, *1a–7a.  That is unsurprising.  As history demonstrates, "[e]very one of the Ten Commandments was enacted into the laws of the colonies and molded the common law of the colonies." Brief for WallBuilders, Inc. as Amicus Curiae Supporting Petitioners, *McCreary Cnty. v. ACLU*, 545 U.S. 844 (2005) (No. 03-1693), at *3.

In keeping with this tradition, many states have Ten Commandments monuments, plaques or other displays on their state grounds to acknowledge the commandments' role in state and national history.  *See* Brief for United States as

---

[7]    *See*    https://www.supremecourt.gov/about/EastPediment10-12-2021_Final.pdf.

[8] *See* https://www.supremecourt.gov/about/northandsouthwalls.pdf.

Amicus Curiae Supporting Respondents, *Van Orden v. Perry*, 545 U.S. 677 (2005) (No. 03-1500), 2005 WL 263790, at *1a–7a (listing displays); Reply to Steven K. Green's Report in *Cave v. Thurston*, No. 4:18-cv-00342-KGB, 2021 WL 4936185 (E.D. Ark. Oct. 22, 2021) (ECF No. 260-49) at *19–20 (Jan. 24, 2020) (listing displays); Kristine Parks, *Ten Commandments monument returns to Kentucky state Capitol grounds after 40 years*, FOXNEWS (Dec. 18, 2025), https://www.foxnews.com/media/ten-commandments-monument-returns-kentucky-state-capitol-grounds-after-40-years. This included Indiana until 1991.  Several of the state monuments and displays are listed here:

- Arizona: a Ten Commandments monument on Memorial Plaza at the State Capitol grounds.

- Colorado:  a Ten Commandments monument on the State Capitol Complex grounds.

- Georgia:  a framed copy of the Ten Commandments in the State Capitol.

- Kentucky:  a Ten Commandments monument on the New State Capitol grounds.

- Missouri:  a Ten Commandments monument on the State Capitol grounds.

- Montana:  a Ten Commandments monument on the State Capitol grounds.

- New York:  a mural of Moses holding the Ten Commandments at the Queens Supreme Court Building.

- Pennsylvania: a mural of Moses carving the Ten Commandments at the State Supreme Court building in Harrisburg, and a mural of Moses holding the Ten Commandments in the Supreme Court Room in Pittsburg.

- Texas: a Ten Commandments monument on the State Capitol grounds.

The full number of these monuments and displays on state grounds and buildings is believed to be considerable. As one expert explained, "[i]t is likely that an exhaustive study of national, state, and municipal government buildings throughout the Nation would discover hundreds of other displays of the Ten Commandments." First Supplemental Expert Report Submitted in *Cave v. Thurston*, No. 4:18-cv-00342-KGB, 2021 WL 4936185 (E.D. Ark. Oct. 22, 2021) (ECF No. 260-3), at *57–58 (Nov. 18, 2019).

Such wide participation by the states is due to both the historic role of the Ten Commandments in the development of state and federal law, and the over 125 year tradition of public monuments and displays that commemorate that history. Like so many other historic practices that "bespeak the rich American tradition of religious acknowledgments," *Van Orden*, 545 U.S. at 690, these monuments and displays "ha[ve] become part of the fabric of our society." *Town of Greece*, 572 U.S. at 576 (quoting *Marsh*, 463 U.S. at 792). The Monument in this case clearly is part of that long tradition and replaces a monument that was part of that tradition. Like all the other displays, including its predecessor, the Monument simply "recognize[s] the role the Decalogue plays in America's heritage," *Van Orden*, 545 U.S. at 689, and acknowledges the commandments' "historical significance as one of the foundations

9

of our legal system." *Am. Legion*, 588 U.S. at 53.  As the Supreme Court so aptly explained over twenty years ago when upholding a similar monument on state capitol grounds, "[s]uch acknowledgements . . . are common throughout America."  *Van Orden*, 545 U.S. at 688.

### III. The State's Monument Is Lawful Under the Supreme Court's Mandated History and Tradition Standard.

This Court, affirmed by the Seventh Circuit, enjoined the Monument's placement on the Statehouse grounds under *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  *See Ind. Civil Liberties Union Inc. v. O'Bannon*, 110 F. Supp. 2d 842, 848 (S.D. Ind. 2000); *Ind. Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 768 (7th Cir. 2001).  *Lemon*, however, has since been "abandoned" and "abrogated."  *Kennedy*, 597 U.S. at 534 ("this Court long ago abandoned *Lemon* and its endorsement test offshoot"); *Groff v. DeJoy*, 600 U.S. 447, 460 (2023) (identifying  *Lemon* as a "(now abrogated) decision"); *St. Augustine Sch. v. Underly*, 78 F.4th 349, 353 (7th Cir. 2023) (observing "*Lemon* has been abrogated by the U.S. Supreme Court.").  *Lemon* no longer controls Establishment Clause analyses.[9]

In its place, the Supreme Court mandated an analysis based on history and tradition.  It requires courts to look to "historical practices and understandings" and draw lines "'between the permissible and impermissible'" that "'accor[d] with history and faithfully reflec[t] the understanding of the Founding Fathers.'"  *Kennedy*, 597 U.S. at 535–36 (quoting *Town of Greece*, 572 U.S. at 577 (alterations in original)).

---

[9] *Lemon*'s "long Night of the Living Dead . . . is now over."  *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 954 n.20 (5th Cir. 2022) (cleaned up).

*Kennedy* shifted the focus of Establishment Clause matters towards the "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." 597 U.S. at 537.

These hallmarks look to whether a government is "mak[ing] a religious observance compulsory"; "forc[ing] citizens to engage in a formal religious exercise"; "exert[ing] control over the doctrine or personnel of the established church"; "mandating attendance" in a church or "punish[ing] people for failing to participate" in church attendance; "punish[ing] dissenting churches and individuals for their religious exercise"; "restric[ing] political participation by dissenters"; "provid[ing] financial support for the established church"; or "us[ing] the established church to carry out certain civil functions." *Kennedy*, 597 U.S. at 537 & n.5 (discussing hallmarks and citing to *Shurtleff* for its discussion of hallmarks); *Shurtleff v. City of Boston*, 596 U.S. 243, 286 (2022) (Gorsuch, J., concurring). They are "helpful guidance" "that localities and lower courts can rely on." *Shurtleff*, 596 U.S. at 285, 287 (Gorsuch, J., concurring).

As demonstrated above, the Monument's placement on the Statehouse grounds fits comfortably within this rubric of history and tradition. It is part of an old tradition of Ten Commandments monuments and displays by state and local governments that acknowledge the role the commandments played in state and national history. That tradition is part of an even older tradition—one that pre-dates the republic—of religious acknowledgements in American public life and practice.

11

Accordingly, the Monument implicates none of the hallmarks of religious establishment our constitution was designed to prevent.

The Establishment Clause is no bar to the Monument's placement on the Statehouse grounds. Rather, there is no doubt, given recent developments in Establishment Clause jurisprudence, that the Monument ought to be afforded "a strong presumption of constitutionality." *Am. Legion*, 588 U.S. at 57.

## CONCLUSION

For these reasons and those offered by Defendant in his motion, the Court should vacate the permanent injunction and modify its judgment accordingly.

January 21, 2026                    Respectfully submitted,

/s/ *Moriah O'Hare*

MORIAH O'HARE\*
FIRST LIBERTY INSTITUTE
1331 Penn. Ave. NW, Ste 1410
Washington, DC 20004
Phone: (202) 921-4105
Fax: (972) 578-7865
mohare@firstliberty.org
\**Supervised by D.C. bar member*

*Counsel for Amicus Curiae*

12

## CERTIFICATE OF SERVICE

I certify that on January 21, 2026, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served upon counsel who are registered CM/ECF users.

I also certify that on January 21, 2026, a copy of the foregoing was served upon the following person by U.S. Mail and a courtesy copy was provided by email to the same:

Stephen Michael Schroeder
112 S. Beatty Street
Columbus, Indiana 47201
Protestantseparatist.ss@gmail.com

/s/ *Moriah O'Hare*

13