UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

INDIANA CIVIL LIBERTIES UNION, *et al.*,   )
                                            )
                          Plaintiffs,       )
                                            )
              v.                            )      No. 1:00-cv-00811-SEB-MKK
                                            )
MIKE BRAUN,                                 )
                                            )
                          Defendant.        )

**Plaintiffs' Memorandum in Opposition to Defendant's Motion for Relief from the Final Judgment and Permanent Injunction[1]**

**Introduction**

In 2000, then-Governor Frank O'Bannon sought to erect on the lawn of the Indiana Statehouse a new nearly six-ton, seven-foot tall, and four-sided tablet-shaped limestone monument containing two large sides and two small ones. One of its large sides, measuring seven feet tall and slightly more than three and a half feet wide, was to display

---

[1]     At the time that final judgment was entered in this case in 2002, the plaintiffs, all represented by Kenneth Falk, were: the Indiana Civil Liberties Union, Inc.; Joan Laskowski; Alice Bennett; James A. Tanford; Steven Schroeder; Patrice Muumba Abduallah; Rev. Kevin Armstrong; Rabbi Eric Bram; and Dr. Edgar Towne. Steven (Stephen) Schroeder is now proceeding *pro se*. (*See* Dkt. 75). Joan Laskowski, Alice Bennett, Rabbi Eric Bram, and Dr. Edgar Towne are now deceased. Kenneth Falk and the ACLU of Indiana (formerly known as the Indiana Civil Liberties Union) represent the remaining plaintiffs.

The Indiana Civil Liberties Union, Inc. is still a registered domestic nonprofit corporation, although it began to be known as the American Civil Liberties Union of Indiana, Inc. in 2005. *See* Indiana Secretary of State, INBiz, https://bsd.sos.in.gov/publicbusinesssearch, searching Business Name – "Indiana Civil Liberties Union, Inc." and "Assumed Name History" (last visited Jan. 13, 2026).

a version of the Ten Commandments. The monument was never erected, as this Court preliminarily enjoined the placement on July 28, 2000. *Indiana Civil Liberties Union v. O'Bannon* ("*O'Bannon*"), 110 F. Supp. 2d 842 (S.D. Ind. 2000), *aff'd*, 259 F.3d 766 (7th Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002). After the Court's preliminary injunction decision was affirmed and Supreme Court review was denied, the preliminary injunction was made the final judgment of the Court on April 24, 2002, and a permanent injunction was entered preventing the State of Indiana "from taking any steps to erect, on the grounds of the Indiana Statehouse, the proposed monument containing the Ten Commandments." (Dkt. 59-6).

More than a quarter century after Governor O'Bannon's original efforts, a new governor, Mike Braun ("the State"), has now returned to this Court seeking relief from the judgment so that he may now place the monument on the Statehouse lawn. The State bases its argument on Federal Rule of Civil Procedure 60(b)(5), which allows for relief from a judgment granting a permanent injunction if "applying it prospectively is no longer equitable." But "[g]iven the importance of finality of judgments, 'Rule 60(b) relief is an extraordinary remedy granted only in exceptional circumstances.'" *FTC v. Credit Bureau Center, LLC*, No. 17 C 194, 2025 WL 3004581, at *2 (N.D. Ill. Oct. 27, 2025) (quoting *In re Cook Med., Inc.*, 27 F.4th 539, 542 (7th Cir. 2022)) (further quotation and citation omitted). An "exceptional circumstance" is not present here and the State's motion should be denied.

**Facts**

On the grounds of the Indiana Statehouse, south of the Capitol Building, is a 1.93 acre lot of park-like land. *O'Bannon*, 110 F. Supp. 2d at 844.[2] In the expanse of this area there are monuments honoring the national road and coal miners, as well as statues of George Washington, Christopher Columbus, Vice President Thomas A. Hendricks, and Governor Oliver P. Morton. *Id.* Additionally, there are a number of ornamental trees that are marked with placards that honor former governors. *Id.*

In 2000 the State proposed to place the above-described Ten Commandments Monument ("Monument") in the southwest area of the lawn that at the time contained only a single tree marked with a placard honoring Governor Schricker and a four-feet-by two-feet-wide monument noting the historic significance of the National Road that ran in front of the Statehouse. *Id.* The site chosen for the Monument was the approximate location of another Ten Commandments monument that had been donated by the Fraternal Order of the Eagles in 1958. *Id.* That monument had been toppled by vandalism in 1991 and was not replaced. *Id.*

The new Monument was created by the Indiana Limestone Institute at the request of then-Representative Brent Steele of Lawrence County. It consists of two pieces, a base topped by an upper portion. *Id.* at 846. In total, the Monument weighs approximately

---

[2]     As noted in its opinion, most of the facts found in this Court's preliminary injunction decision were stipulated to by the parties.

[3]

11,500 pounds and is almost seven feet tall. *Id.* at 846. The upper portion consists of two large sides, front and back, carved to resemble tablets that are three feet, seven inches in width. *Id.* One of the tablet sides displays only the following version of the Ten Commandments in all capital letters:

TEN COMMANDMENTS

I.      THOU SHALT HAVE NO OTHER GODS BEFORE ME

II.     THOU SHALT NOT MAKE UNTO THEE ANY GRAVEN IMAGE

III.    THOU SHALT NOT TAKE THE NAME OF THE LORD THY GOD IN VAIN

IV.     REMEMBER THE SABBATH DAY AND KEEP IT HOLY

V.      HONOR THY FATHER AND MOTHER THAT THY DAYS MAY BE LONG IN THE LAND WHICH THE LORD GOD GIVETH THEE

VI.     THOU SHALT NOT KILL

VII.    THOU SHALT NOT COMMIT ADULTERY

VIII.   THOU SHALT NOT STEAL

IX.     THOU SHALT NOT BEAR FALSE WITNESS AGAINST THY NEIGHBOR

X.      THOU SHALT NOT COVET THY NEIGHBOR'S HOUSE OR WIFE OR ANYTHING THAT IS THY NEIGHBOR'S

*Id.* The other large side of the Monument has inscribed on it the Bill of Rights in slightly smaller letters than the Ten Commandments. *Id.* On one of the smaller sides is the text of the Preamble to Indiana's 1851 Constitution and the other small side has an inscription

[4]

identifying the donor as the Indiana Limestone industry and stating that the Monument replaces the 1958 monument. *Id.*

In explaining the Monument's purpose in a press release, Governor O'Bannon stressed that it would serve as a reminder of "'some of the nation's core values'" and would exemplify "'ideals' that all people 'need to be reminded of from time to time.'" *Id.* at 847 (quoting the press release). Representative Steele echoed this but conceded that some of the statements in the Ten Commandments are forms of religious expression. *Id.*

The Monument was created, but was never placed on the Statehouse grounds and was instead placed on the grounds of the Lawrence County Courthouse. *See Kimbley v. Lawrence Co., Ind.*, 119 F. Supp. 2d 856, 858-61 (S.D. Ind. 2000). This led to new litigation against Lawrence County and a preliminary injunction ordering the removal of the Monument. *Id.* at 876. The Monument is currently located on the grounds of the 39th Street Christian Church in Bedford, Indiana. (Dkt. 59-7 at 1-5).

The State is now proposing to place the Monument on the Statehouse grounds "near its original intended location." (Press Release, attached to this memorandum as Exhibit 1).[3] The only thing that has been added to that area of the Statehouse grounds since 2000 is something that the State has identified on a map that it has submitted as

---

[3]    The press release is available at https://events.in.gov/event/governor-mike-braun-and-attorney-general-todd-rokita-ask-federal-court-to-lift-20-year-ban-on-historical-monument-at-indiana-statehouse?utm_campaign=widget&utm_medium=widget&utm_source=State+of+Indiana (last visited on Jan. 22, 2026).

"September 1, 2001," presumably a reference to a monument honoring the events of September 11, 2001. (Dkt. 59-8 [showing on the map of the grounds as M-3]).

### The prior proceedings in this case

In its July 28, 2000 decision, this Court assessed the constitutionality of the display through application of the test set out in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), as augmented by the endorsement test of *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573 (1989). *See O'Bannon*, 110 F. Supp. 2d at 848-49. Under *Lemon*, governmental action was unconstitutional if it failed to have a secular purpose, its primary effect advanced or inhibited religion, or it fostered excessive entanglement with religion. *Lemon*, 403 U.S. at 611-12. The endorsement analysis specified that the "the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context." *County of Allegheny*, 492 U.S. at 599.

In *O'Bannon*, 110 F. Supp. 2d at 851, this Court acknowledged that the Supreme Court has recognized that "[t]he Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths." *Stone v. Graham*, 449 U.S. 39, 41 (1980). Although the State articulated a historical purpose for the Monument, it was unable to articulate "any historical linkage between seven of the commandments and only weak historical links to three of them." *O'Bannon*, 110 F. Supp.2d at 851. Ultimately, this Court concluded that the purpose of posting the Monument was religious.

[6]

> This conclusion is reenforced by the very design of the Monument as well as its words. The Ten Commandments are not physically linked to the other texts on the display, appearing by themselves on one side of the large tablet-shaped block. The other three sides of the Monument will, respectively, display the texts of other documents and the Monument's dedication. No indication will appear on the monument to the effect that the Ten Commandments are displayed for their historical significance, as might be suggested by their visual proximity to several other historical texts or with an explanatory marker. Rather, the Ten Commandments will be displayed in such a way that a person looking at them will see only the Ten Commandments, as they are set out on a seven-foot tall limestone block.

*Id.* at 852 (footnote omitted) (cleaned up).

Given this, this Court also concluded that "because of the content and shape of the proposed Monument, the proposed location and the permanence of the display, we conclude that a reasonable person would perceive in this display a message of government endorsement of religion, which compels our finding that the Monument fails the second prong of the *Lemon* test." *Id.* at 858. The State appealed the preliminary injunction, a divided panel of the Seventh Circuit affirmed this Court's decision, and the United States Supreme Court denied certiorari. *Indiana Civil Liberties Union v. O'Bannon,* 259 F.3d 766 (7th Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002). As noted, after remand, the parties agreed that the preliminary injunction would be made permanent and this Court entered its Final Judgment granting the permanent injunction. (Dkts. 59-5, 59-6).

The Stipulation to Enter Final Judgment provides that "[i]f there is a change in governing precedent allowing government displays of the Ten Commandments, the

[7]

Defendant reserves the right to file a motion under Rule 60 of the Federal Rules of Civil Procedure to lift or modify the permanent injunction." (Dkt. 59-5). The State has now, nearly a quarter of a century later, filed to vacate the permanent injunction. There are no grounds to do.

### The Motion for Relief from Judgment Should be Denied

The State's argument is simple but flawed. Inasmuch as the Supreme Court has abandoned *Lemon* and the endorsement test, *see e.g.*, *Kennedy v. Bremerton School District*, 597 U.S. 507, 534 (2022) ("this Court long ago abandoned *Lemon* and its endorsement test offshoot") (citing *American Legion v. American Humanist Ass'n*, 588 U.S. 29, 48-51 (2019) (plurality) and *Town of Greece v. Galloway*, 572 U.S. 565, 575-77 (2014)), the State argues that relief from judgment must be granted under Rule 60(b)(5). But there is nothing in the abrogation of *Lemon* or in current Supreme Court jurisprudence that makes the continued application of the permanent injunction inequitable and justifies the grant of this unreasonably delayed motion.

### I.    The State's motion has not been made within a "reasonable time"

It is certainly true that an injunction may be modified under Rule 60(b)(5) "when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367 (1992). However, such a motion "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). The Seventh Circuit has noted that when it comes to Rule 60(b)(5) "what is reasonable depends on the

[8]

circumstances." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisc. v. Wisconsin*, 769 F.3d 543, 548 (7th Cir. 2014). This requires consideration of various "factors includ[ing] the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice if any to other parties." *Shakman v. City of Chicago*, 426 F.3d 925, 934 (7th Cir. 2005) (cleaned up).

This motion has not been made within a reasonable time. First, to point out the obvious, the State has certainly taken its time to file its motion. As noted, *supra* at 8, in June of 2022 in *Kennedy* the Supreme Court stated that *Lemon* and the endorsement tests had been "long ago abandoned," 597 U.S. at 534, citing the *American Legion* and *Town of Greece* cases from 2019 and 2014, respectively. The State does not claim that it was not aware of *Kennedy*, *American Legion*, or *Town of Greece* until recently. Nor could it. Not only were these decisions well-publicized, but the State of Indiana appeared as *amicus curiae* in all three cases in the Supreme Court.[4] Nevertheless, the State has waited all this

---

[4]     *See* Br. of Twenty-Seven States [including Indiana] as *Amici Curiae*, *Kennedy v. Bremerton School District*, No. 21-418 (filed Mar. 2, 2022), *available at* https://www.supremecourt.gov/ DocketPDF/21/21-418/215474/20220302151320692_21-418%20Kennedy%20Amicus.pdf (last visited Jan. 19, 2026);

Br. of *Amici Curiae* State of West Virginia and 29 Other States [including Indiana], *American Legion v. American Humanist Ass'n*, Nos. 17-1717 & 18-0018 (filed Dec. 24, 2018), available at https://www.supremecourt.gov/DocketPDF/17/17-1717/77502/20181224111808599_FINAL% 20Merits%20Stage%20Amicus%20Am.%20Legion%20v%20Am.%20Humanist%20Cross%20Cas e.pdf (last visited Jan. 19, 2026);

time to attack this Court's permanent injunction. There is no reason for this lengthy delay.

In *Freedom from Religion Foundation, Inc. v. Chino Valley Unified School District*, EDCV 14-2336 JGB (DTBx), 2025 WL 3282571 (C.D. Cal. Oct. 10, 2025), *app. pending*, No. 25-7104 (9th Cir.), the district court had entered an injunction in 2016 preventing religious prayers and proselytizing at school board meetings. *Id.*, at *1. In July of 2025, the defendants moved for relief from the judgment under Rule 60(b)(5), arguing that *Kennedy* removed the legal basis for the injunction. *Id.*, at *2. The district court denied the motion finding, among other things, that the three-year delay in filing since *Kennedy* was not reasonable. "Defendants waited over three years after *Kennedy* to file this Motion. Defendants provide no reason, let alone 'exceptional circumstances,' to justify this three-year delay. Defendants likely knew of *Kennedy* when it was published on June 27, 2022." *Id.*

The only reason for delay, offered by the State by implication only, is that there is now a different person in the office of Governor than there was in 2022, 2019, or 2014. (Dkt. 60 at 19 n.2). While it is certainly true that the Supreme Court has cautioned that there are special considerations in reviewing 60(b)(5) motions addressed to

---

*Br*. of Indiana, Texas, and Twenty-One Additional States as *Amici Curiae*, *Town of Greece v. Galloway*, No. 12-696 (filed Aug. 2, 2013), *available at* https://sblog.s3.amazonaws.com/wp-content/uploads/2013/08/Town_of_Greece_v._Galloway-Amicus-States.pdf (last visited Jan. 19, 2026).

"institutional reform litigation" that "micromanage" state officials and budget priorities and thus may impose on the officials "policy preferences of their predecessors," this is not such a case. *Horne v. Flores*, 557 U.S. 433, 447-49, n.3 (2009). The judgment here is not a consent decree that intrudes on the ability of Governor Braun "to bring new insights and solutions to problems of allocating revenues and resources." *Frew v. Hawkins*, 540 U.S. 431, 442 (2004). It is not a detailed injunction in institutional reform litigation where district courts are directed "to take a flexible approach to proposed modifications of consent decrees that bind public entities," as such decrees implicate strong "concerns of federalism." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005). It does not require continuing micromanaging over the nearly quarter century that it has been in effect as it has imposed no financial or similar obligations on the State. The bottom line is that the State has to come up with a better reason for delay other than that almost a year ago a new governor took office.

Moreover, this is not a case where the State can convincingly contend that its position regarding the Establishment Clause has shifted between gubernatorial administrations. For nearly a dozen years, it has consistently taken the position that historical context should govern Establishment Clause jurisprudence and, in so doing, has repeatedly invoked the display of the Ten Commandments as an area of intense concern. *See* Br. of Indiana, Texas, and Twenty-One Additional States as *Amici Curiae*, *Town of Greece v. Galloway*, No. 12-696, at 26-27 (filed Aug. 2, 2013), *available at*

[11]

https://sblog.s3.amazonaws.com/wp-content/uploads/2013/08/Town_of_Greece_v._ Galloway-Amicus-States.pdf (last visited Jan. 19, 2026); Br. of *Amici Curiae* State of West Virginia and 29 Other States, *American Legion v. American Humanist Ass'n*, Nos. 17-1717 & 18-0018, at 16, 28 (filed Dec. 24, 2018), *available at* https://www.supremecourt.gov/ DocketPDF/17/17-1717/77502/20181224111808599_FINAL%20Merits%20Stage%20Ami cus%20Am.%20Legion%20v%20Am.%20Humanist%20Cross%20Case.pdf (last visited Jan. 19, 2026). The fact that the Supreme Court ruled in favor of the litigants the State's amicus briefs supported, yet it still delayed seeking this relief for years is fatal to its Rule 60(b)(5) motion.

Aside from having to deal with the State's motion at this point in time, plaintiffs are not currently aware of any prejudice to them. However, this does not make the State's delay reasonable. It is, of course, the State's burden to justify its entitlement to relief under Rule 60(b)(5), *Horne*, 557 U.S. at 447, and its ability to seek relief from judgment must, ultimately, be balanced against the "interest in finality," *Shakman*, 426 F.3d at 934. While the interest may be weaker when a consent decree "bind[s] all future officers of the State, regardless of their view of the necessity of relief from one or more provisions of a decree that might not have been entered had the matter been litigated," *Rufo*, 502 U.S. at 392, this is obviously not such a case. "[T]he interest in finality of judgments may assume greater or lesser prominence according to the nature of the case and the private and public interests implicated, but should not be either deprecated or

ignored." *Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3rd Cir. 1995). The State offers no reason for delay, but merely seeks to disturb a Final Judgment entered decades ago because the State is displeased with the order. It has, presumably, been displeased with the order since it issued. The State seeks to ignore the importance of the finality of the Court's Final Judgment and there is no excuse for its delay. Its Rule 60(b)(5) request may be rejected for this reason alone.

**II.    The Supreme Court's current First Amendment jurisprudence does not compel the conclusion that this Court's Final Judgment was erroneous**

**A.    Utilizing the Supreme Court's "historical practices" Establishment Clause analysis still leads to the conclusion that placing the Monument on the Statehouse grounds would be unconstitutional**

In abandoning *Lemon* and endorsement, the Supreme Court stressed that "the Establishment Clause must be interpreted by reference to historical practices and understandings." *Kennedy*, 597 U.S. at 535 (quotation and citations omitted). Thus, in *Town of Greece* the Court found that sectarian prayer prior to a town board meeting did not offend the Establishment Clause as it "fit[] the tradition long followed in Congress and the state legislatures." 572 U.S. at 577. In *American Legion* the Court concluded that a Latin cross honoring soldiers killed in World War I, which had been standing for nearly 100 years, did not offend the Establishment Clause as it was a "monument[ ] . . . with a longstanding history." 588 U.S. at 63 (plurality). Justice Breyer, concurring with Justice Kagan, stressed that "[t]he case would be different, in my view, if there were evidence

[13]

that . . . the Cross had been erected only recently, rather than in the aftermath of World War I." *Id.* at 67 (Breyer, J., concurring). As the narrowest opinion necessary to the Court's judgment, Justice Breyer's opinion controls. *See Marks v. United States*, 430 U.S. 188, 193 (1977). However, the historical approach asks about more than the length of time that the display has been present and considers "whether a longstanding tradition supports a challenged governmental practice and whether the practice 'fits within the tradition.'" *Woodring v. Jackson City., Ind.*, 986 F.3d 979, 995 (7th Cir. 2021) (quoting *Town of Greece*, 572 U.S. at 577).

In *Woodring*, decided after *American Legion*, the Seventh Circuit rejected the argument that a temporary creche display that had adorned a courthouse lawn for 15 years was "longstanding." 986 F.3d at 993-95. However, the court concluded that creche displays on public grounds as part of holiday displays had long been a part of the Christmas season and thus fit within the "historical tradition" contemplated by *American Legion*. *Id.* at 995-96.

Although it is certainly true that there was a version of the Ten Commandments monument on the Statehouse grounds prior to 1991, no Ten Commandments monument has been present since that time, almost 35 years. This is therefore not like the Latin Cross in *American Legion* that had been in its location, undisturbed, for nearly a century. And temporary Christmas decorations, including creche displays, have a very different history from the permanent, seven-foot Monument at issue here.

[14]

The State nevertheless contends that there is a longstanding tradition of displays of the Ten Commandments in general and that, as a general matter, the Ten Commandments have an "undeniable historical meaning." (Dkt. 60 at 9 [quoting *Van Orden v. Perry*, 545 U.S. 677, 690 (2005) (plurality)]). In *Van Orden*, the Court upheld the constitutionality of a Ten Commandments monument that had been on the Texas State Capital Grounds, along with many other monuments and historical markers, for more than 40 years. *Id.* at 681-82. The plurality noted that acknowledgements of the role played by the Ten Commandments in our heritage are common in the United States. *Id.* at 688. Justice Breyer, in his controlling concurrence that provided the fifth vote to find that the monument was constitutional, stressed that this was a "borderline case" but a number of factors demonstrated that the monument was constitutional, including the fact that it was part of a physical setting "containing 17 monuments and 21 historical markers, all designed to illustrate the 'ideals' of those who settled in Texas and of those who have lived there since that time." *Id.* at 702 (Breyer, J., concurring). However, what proved to be dispositive to Justice Breyer was that the "display has stood apparently uncontested for nearly two generations." *Id.* at 704. There is no similar continuity or long history of uncontroverted display of the Monument here.

On the other hand, on the same day that the Court decided *Van Orden*, the Court decided *McCreary County, Kentucky v. American Civil Liberties Union of Kentucky*, 545 U.S. 844 (2005), where it upheld a preliminary injunction that had prohibited new displays of

[15]

the Ten Commandments in two county courthouses, even after the Ten Commandments were integrated into displays of historical documents. *Id.* at 850, 858. Although much of the opinion focused on the now-abrogated *Lemon* case and its purpose prong, the Court stated that it cannot be denied "that the Commandments have had influence on civil or secular law; a major text of a majority religion is bound to be felt. The point is simply that the original text viewed in its entirety is an unmistakably religious statement dealing with religious obligations and with morality subject to religious sanction." *Id.* at 869. As the Court noted, "[d]displaying that text is thus different from a symbolic depiction, like tablets with 10 roman numerals, which could be seen as alluding to a general notion of law, not a sectarian conception of faith. Where the text is set out the insistence of the religious message is hard to avoid." *Id.* at 868.[5]

The State argues that the "history and tradition" test that has replaced *Lemon* similarly requires a conclusion that placement of the Monument on the Statehouse lawn is constitutional. But as the Supreme Court held in *McCreary County*, there is a difference between a depiction of the Ten Commandments not containing readable text and setting out the text of the Decalogue in large lettering. The former is a symbolic depiction of an arguably important historical document; the latter is a proclamation of religious

---

[5]    An oft-cited example of a symbolic depiction is in the "Lawgiver's Frieze" on the south wall of the United States Supreme Court that includes Moses with a representation of partially visible tablets. *Courtroom Friezes: South and North Walls*, https://www.supremecourt.gov/about/northandsouthwalls.pdf (last visited Jan. 18, 2026).

[16]

principles and commands imposed by God. Unlike the Ten Commandments monument found constitutional in *Van Orden*, the proposed Monument has not been in place for decades. Unlike the legislative prayer in *Town of Greece*, the Latin Cross displayed for nearly a century in *American Legion*, and the longstanding practice of a creche displayed as part of Christmas display in *Woodring*, there is no longstanding tradition of the practice of displaying the complete text of the Ten Commandments in prominent locations in public places. It is ironic that the State is arguing to the contrary, despite the fact that the Monument has been ensconced in front of a Christian church, presumably for the more than 25 years since the *Kimbley* decision.

It is, of course, true that the Supreme Court has cautioned that relief under Rule 60 is appropriate if "it rests upon a legal principle that can no longer be sustained." *Agostini v. Felton*, 521 U.S. 203, 238 (1997). However, the demise of *Lemon* and the accompanying endorsement analysis do not justify overruling this Court's permanent injunction preventing the seven-foot high Ten Commandments monument.

> **B.     There has been no change in the law of standing that justifies relief from judgment**

As a secondary argument, the State contends that there have been "significant changes" in Establishment Clause standing doctrine that makes continued enforcement of the injunction detrimental to the public interest. (Dkt 60 at 14). In *O'Bannon*, the plaintiffs' standing was based on the fact that they were "forced into frequent, direct, and unwelcome contact with the monument during the course of their normal routines" and

[17]

"alter[ing] those routines to avoid the monument would impose an undue burden."

*O'Bannon*, 110 F. Supp. 2d at 847. This type of harm has long been recognized as satisfying

the standing requirements imposed by Article III. *See, e.g., Books v. City of Elkhart, Indiana*,

235 F.3d 292, 299-300 (7th Cir. 2000) (citing cases).

Nevertheless, the State argues what it labels as the "offended observer" theory of

standing is no longer available to plaintiffs. (Dkt. 60 at 16). As an initial matter, the fact

that the law of standing may have changed since the injunction is not an independent

ground to terminate the injunction, although it could be an equitable factor to consider.

*O'Sullivan*, 396 F.3d 834 at 868. However, there is no need to go down this road as the law

of standing regarding the Establishment Clause has not changed.

The State's argument relies on Justice Gorsuch's concurrence in *American Legion*,

588 U.S. at 87 (Gorsuch, J., concurring) as well as statements that he made respecting the

denial of certiorari and a dissent issued by Justice Thomas regarding that denial in *City

of Ocala, Florida v. Rojas*, 598 U.S. --, 143 S. Ct. 764, 765-68 (2023) (statement of Gorsuch, J.;

Thomas, J., dissenting from denial of certiorari). (*See* Dkt. 60 at 16). Citing the views of

two of the nine justices is not particularly helpful here given that standing in *American

Legion* was based on the "offended observer" theory of standing. In *Woodring* the Seventh

Circuit concluded that the plaintiff had standing to challenge the creche display based on

being forced to see it. 986 F.3d at 985-86. An amicus in the case raised the same argument

that the State raises here and it was quickly rejected by the court,

[18]

Amici go further than the County and urge us to ditch "offended observer" standing based on *American Legion*. But only two Justices in *American Legion* addressed standing. *Am. Legion*, 139 S. Ct. at 2098–2103 (Gorsuch, J., concurring in the judgment) (joined by Justice Thomas). The rest of the Justices addressed the merits without mentioning standing—even though, as the Fourth Circuit's opinion below shows, the plaintiffs in *American Legion* were also relying on "offended observer" standing. *Am. Humanist Ass'n v. Md.-Nat's Capital Park & Planning Comm'n*, 874 F.3d 195, 203 (4th Cir. 2017) (concluding that the plaintiffs had standing because they "regularly encountered the Cross as residents while driving in the area"), *revved and remanded sub nom. Am. Legion*, ⸻ U.S. ⸻, 139 S. Ct. 2067.

986 F.3d at 986. The court therefore refused to reconsider its prior cases recognizing "offended observer" standing and it remains the law in the circuit. There are therefore no grounds to reconsider the fact that the plaintiffs in this case possessed standing when the case was filed, and would continue to do so if the case were filed today.

## Conclusion

The State's motion is untimely and the Court need go no further. However, the State attempts to cast the Court's permanent injunction as creating sensitive concerns about federalism and intruding on the domain of state government that should be rectified now. But as stressed above, this case is not like the numerous cases cited by the State in which a state is burdened by a detailed and onerous judgment, consented to by prior executives and interfering with the operation of the government today. It is a case about a single monument that is sitting on church property as its fate is debated here. The law has not changed to the point where placing this large Ten Commandments Monument on the Statehouse lawn is constitutional. The State's motion must therefore

[19]

be denied as continuing the injunction is not "detrimental to the public interest." *Rufo*,

502 U.S. at 384.

Kenneth J. Falk
Stevie J. Pactor
Joshua T. Bleisch
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org
jbleisch@aclu-in.org

Attorney for the Plaintiffs, with the Exception of Stephen Schroeder

### Certificate of Service

I certify that a copy of the foregoing was served on this 22nd day of January 2026 through the Court's case management/electronic case filing system.

I also certify that a copy was served by first-class U.S. postage, pre-paid, and via electronic mail on this 22nd day of January 2026 on:

Stephen Schroeder
112 S. Beatty St.
Columbus, IN 47201
Protestantsseparatist.ss@gmail.com

Kenneth J. Falk
Attorney at Law

[20]