UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA CIVIL LIBERTIES UNION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:00-cv-00811-SEB-MKK |
| | ) | |
| MIKE BRAUN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR RELIEF FROM THE FINAL
JUDGMENT AND PERMANENT INJUNCTION**

This lawsuit originated more than twenty-five years ago, in 2000, when then-Governor Frank O'Bannon sought to erect on the lawn of the Indiana Statehouse a four-sided tablet-shaped limestone monument containing two large sides and two small sides. On one of the monument's large sides, measuring seven feet tall and slightly more than three and a half feet wide, was displayed the full text of the Ten Commandments; other sides of the monument were inscribed with the Bill of Rights and the Preamble to the Indiana Constitution.[1]  Plaintiff Indiana Civil Liberties Union ("ICLU") and its co-Plaintiffs[2] filed this lawsuit under 42 U.S.C. § 1983, arguing that erecting the monument

---

[1] The new monument was designed to replace an earlier monument inscribed with the Ten Commandments that had been vandalized by one of the Plaintiffs in this litigation.

[2] At the time final judgment was entered in 2002, Plaintiffs, all of whom were represented by Kenneth Falk, included: the ICLU, Joan Laskowski, Alice Bennet, James A. Tanford, Steven Schroeder, Patrice Muumba Abduallah, Rev. Kevin Armstrong, Rev. Eric Bram, and Dr. Edgar Towne.  Mr. Schroeder is now proceeding *pro se* and Ms. Laskowski, Ms. Bennett, Rabbi Bram, and Dr. Towne are now deceased.  Kenneth Falk and the ACLU of Indiana (formerly known as the Indiana Civil Liberties Union) represent the remaining Plaintiffs.

1

on the Statehouse grounds would violate the Establishment Clause of the First Amendment.[3]

The monument was never erected because, on July 28, 2000, the Court preliminarily enjoined its installation, holding that Plaintiffs were likely to succeed in showing that its placement would violate the Establishment Clause, as that clause had been construed by the United States Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  Following the Court's entry of the preliminary injunction, that decision was affirmed by the Seventh Circuit and the Supreme Court denied *cert*.  The parties then entered into a stipulation agreeing to entry of final judgment "because they believe that current governing precedent interpreting the First Amendment precludes the Defendant from erecting the proposed monument containing the Ten Commandments on the Statehouse lawn."  Dkt. 59-5 at 1.  Their stipulation included an agreement that "[i]f there is a change in governing precedent allowing government displays of the Ten Commandments, the Defendant reserves the right to file a motion under Rule 60 of the Federal Rules of Civil Procedure to lift or modify the permanent injunction agreed to in this Stipulation."  *Id.*  On April 24, 2002, final judgment was entered based on the parties' stipulation, and a permanent injunction was entered by the Court prohibiting the State of

---

The ICLU is still a registered domestic nonprofit corporation, although it began to be known as the American Civil Liberties Union of Indiana, Inc. in 2005.  *See* Indiana Sec. of State, INBiz, https://bsd.sos.in.gov/publicbusinesssearch, searching Business Name – "Indiana Civil Liberties Union, Inc." and "Assumed Name History" (last visited May 21, 2026).

[3] Plaintiffs framed their challenge to the installment of the Ten Commandments monument in violation of the Establishment Clause, not to the constitutionality of Indiana Code § 4-20.5-21-2, which statute allows for the posting of the Ten Commandments on State property.

2

Indiana "from taking any steps to erect, on the grounds of the Indiana Statehouse, the proposed monument containing the Ten Commandments."  Dkt. 59-6.

Now, nearly twenty-five years later, Governor Mike Braun (the "State") is seeking relief from that judgment in an effort to permit the State to place the monument on the Statehouse lawn, arguing that the Court should vacate its permanent injunction, pursuant to Federal Rule of Civil Procedure 60(b)(5), because the holding in *Lemon*—which provided the legal basis underpinning the judgment—was abrogated by the Supreme Court's decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), and thus, no longer provides an equitable basis on which to prospectively apply the judgment. Plaintiffs oppose the State's Rule 60 motion on the grounds that it was not filed within a "reasonable time" and "there is nothing in the abrogation of *Lemon* or in current Supreme Court jurisprudence that makes the continued application of the permanent injunction inequitable and justifies the grant of this unreasonably delayed motion."  Dkt. 80 at 8.

## Pending Motion and Standard of Review

Currently before the Court is Defendant's Motion for Relief from the Final Judgment and Permanent Injunction [Dkt. 59],[4] filed on December 29, 2025.  Federal Rule of Civil Procedure 60(b)(5) provides, in pertinent part, that "the court may relieve a

---

[4] Also currently pending are Defendant's Motion or Leave to File Notice of Supplemental Authority [Dkt. 90], which we hereby <u>GRANT</u>, and the Motion for Leave to File Brief of Amicus Curiae [Dkt. 79], filed by Interested Party Fraternal Order of Eagles, which motion is <u>DENIED</u> as it essentially duplicates the arguments set forth in the State's briefing. *See Nat'l Organization for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000) ("The policy of this court is … never to grant permission to file an amicus curiae brief that essentially merely duplicates the brief of one of the parties ….").

party or its legal representative from a final judgment, order, or proceeding for the following reasons[, including if] … applying it prospectively is no longer equitable …." "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quotation omitted). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* The party seeking Rule 60(b)(5) relief must also show that the proposed relief is "suitably tailored to the changed circumstances." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 393 (1992). "[O]nce a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Horne*, 557 U.S. at 447 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

"The standards for modifying injunctions under Rule[] 60(b)(5) … that govern injunctions that result from a ruling on the merits apply with equal force to those that result from a voluntary settlement reached by the parties." *Fisher v. Hamos*, No. 06 C 4405, 2012 WL 13206067, at *5 (N.D. Ill. May 8, 2012). While "[a] consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature … it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo*, 502 U.S. at 378. The Seventh Circuit has made clear that "when considering a Rule 60(b) motion with respect to public litigation, the nature of that

4

litigation must factor into the district court's decision-making process; the public interest and 'concerns of federalism' should guide the court's analysis." *Shakman v. City of Chi.*, 426 F.3d 925, 936 (7th Cir. 2005) (quoting *O'Sullivan v. City of Chi.*, 396 F.3d 843, 868 (7th Cir. 2005)).

## Legal Analysis

### I.    Timeliness

Plaintiffs' opening challenge to the State's Rule 60 motion is their contention that the motion was not filed within a reasonable time.  As we have noted, our judgment was entered in 2002.  But not until June 2022, in *Kennedy*, did the Supreme Court definitively rule that *Lemon* and the endorsement tests had been "long ago abandoned," 597 U.S. at 534, citing *American Legion v. American Humanist Association*, 588 U.S. 29, 46–51 (2019) and *Town of Greece v. Galloway*, 572 U.S. 565, 575–77 (2014).  The State does not claim that it was unaware of that developing case law.  In fact, the State itself had appeared as *amicus curiae* in all three cases before the Supreme Court.  Nonetheless, it waited until December 29, 2025—three and a half years after *Kennedy*—to seek relief from judgment.  Plaintiffs argue that the State has failed to provide a persuasive reason for this delay, and that its Rule 60(b) motion should therefore be denied.

Motions for relief from judgment under Rule 60(b)(5) must be made within a "reasonable time."  Fed. R. Civ. P. 60(c)(1).  "[W]hat constitutes 'reasonable time' for a filing under Rule 60(b) depends on the facts of each case."  *Ingram v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950, 952 (7th Cir. 2004).  In addition to relying on the litigants' knowledge of the grounds for relief, other factors that courts typically

consider in assessing timeliness include: "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice if any to other parties." *Shakman*, 426 F.3d at 934 (citation modified).

The Supreme Court has made clear that it alone has the "'prerogative of overruling its own decisions,'" *Agositini*, 521 U.S. at 237, and, as the Seventh Circuit has observed, neither *American Legion* nor *Town of Greece* "formally overruled *Lemon*." *Woodring v. Jackson Cnty.*, 986 F.3d 979, 988 (7th Cir. 2021). The Seventh Circuit, however, has identified *Kennedy* as the decision "abrogat[ing]" *Lemon*. *St. Augustine Sch. v. Underly*, 78 F.4th 349, 353 (7th Cir. 2023). Accordingly, the State cannot be fairly faulted for its failure to seek relief from the judgment in this case prior to the issuance of the *Kennedy* decision in June 2022.

In assessing the reasonableness of the State's delay in filing the instant motion, we also weigh the fact that the Governor who seeks this relief could not have done so prior to his taking office in January 2025. In the area of public litigation, the Seventh Circuit has made clear that district courts "must take into account the nature of that litigation as well as the resulting prejudice, if any, to the present elected officials and the public they represent" in assessing timeliness under Rule 60(b). *Shakman*, 426 F.3d at 934. Were we to decide this issue solely on the basis of the litigants' knowledge of the grounds for relief, we would risk "bind[ing] all future officers of the State" to the decision of the

6

executive in power at the time the significant change in the law first arose. *Rufo*, 502 U.S. at 392.[5]

Plaintiffs concede that, "[a]side from having to deal with the State's motion at this point in time," they "are not currently aware of any prejudice to them" resulting from the State's delay. Dkt. 80 at 12. As important as the interest in finality of judgments is, it does not prevail when, as in this instance, the parties expressly contemplated a possible need to revisit their stipulated judgment at some point in the future. Governor Braun has moved for relief from judgment within one year of his taking office, and Plaintiffs acknowledge that they have suffered no prejudice by that delay. We hold that the State's Rule 60 motion was filed within a "reasonable time" and therefore is not subject to dismissal on the basis of its untimeliness.

## II.    Equity of Prospective Enforcement

The State seeks relief from judgment under Rule 60(b)(5) on the ground that there has been a significant change in the governing law, namely, the Supreme Court's abrogation of *Lemon* and the endorsement test, that makes inequitable the prospective enforcement of the Court's permanent injunction prohibiting the State from installing the Ten Commandments monument on the Statehouse grounds. Plaintiffs do not dispute the abrogation of *Lemon* nor that it constitutes a "significant change" in the law on which the original judgment was based. They maintain nonetheless that the State is not entitled to

---

[5] Plaintiffs highlight the fact that *Rufo* and *Shakman*, unlike the case at bar, involved institutional reform litigation. While federalism concerns and the potential for government prejudice may be more significant in such cases, we do not view a distinction regarding the nature of the litigation to be dispositive.

Rule 60 relief because it has failed to establish that the placement of the Ten Commandments monument on the Statehouse grounds would be constitutional under current Supreme Court Establishment Clause case law, and thus, the State has failed to show that continued enforcement of the permanent injunction is inequitable.

The Supreme Court directs that an injunction be vacated if "it rests upon a legal principle that can no longer be sustained." *Agostini*, 521 U.S. at 238.  It is indisputable here that Establishment Clause jurisprudence has changed significantly since 2002, when the final judgment was first entered in this case, and further, there is also no dispute that *Lemon*, which served as the primary legal underpinning for the judgment, no longer provides the applicable legal test for assessing an Establishment Clause claim in this context.  Under these circumstances, we conclude that the State has made a sufficient showing that the continued prospective enforcement of the permanent injunction, which was supported entirely by precedent that has now been abrogated, is not equitable.

That said, we do not have before us a sufficient factual record to allow for the determination sought by the State, specifically, that "there is no question that placing the Monument on the Statehouse grounds is constitutional" under the current legal landscape. Dkt. 60 at 14.  In *Kennedy*, the Supreme Court ruled that, "[i]n place of *Lemon* and the endorsement test," the Establishment Clause must be interpreted by "'reference to historical practices and understandings.'"  597 U.S. at 535 (quoting *Town of Greece*, 572 U.S. at 576).  "'The line' that courts and governments 'must draw between the permissible and the impermissible'" must "'accor[d] with history and faithfully reflec[t] the understanding of the Founding Fathers.'"  *Id.* at 535–36 (quoting *Town of Greece*, 572

U.S. at 577).  This kind of historical inquiry "requires serious work …."  *Shurtleff v. City of Boston*, 596 U.S. 243, 285 (Gorsuch, J., concurring in the judgment).

Since *Kennedy*, courts addressing Establishment Clause challenges to the government's display of the Ten Commandments under varying factual circumstances have reached differing conclusions regarding whether the specific government practice at issue would have been historically understood as an establishment of religion.  *E.g.*, *Nathan v. Alamo Heights Ind. Sch. Dist.*, 173 F.4th 576 (5th Cir. 2026) (holding that state statute requiring the display of the Ten Commandments in public school classrooms did not bear hallmarks of founding-era establishment of religion, and thus did not facially violate the Establishment Clause); *Cave v. Jester*, -- F. Supp. 3d --, 2026 WL 916187 (E.D. Ark. Mar. 31, 2026) (holding that the passage of an act "requiring the permanent placement of the Ten Commandments Monument on the State Capitol Grounds … violates the Establishment Clause," in part because "the placement of a Ten Commandments Monument on State Capitol grounds does not fit within and is not consistent with a broader tradition in place at the time of the founding").  In each of these cases, courts had the benefit of extensive factual records, including expert testimony and evidentiary submissions from a variety of historical sources addressing the founding-era history of the challenged government action.  *See*, *e.g.*, *Nathan*, 173 F.4th at 593–601; *Cave*, 2026 WL 916187, at *44–*47.

We lack a similarly well-developed historical record.  Although the State argues generally that there exists a longstanding American tradition of recognizing the historical, cultural, and legal significance of the Ten Commandments, in *Town of Greece*, the

Supreme Court made clear that the question is whether "history shows that the *specific practice* is permitted," not whether there is historical support for a more general practice. 572 U.S. at 577 (emphasis added).  Determining whether the specific practice at issue here, to wit, the State's erection of a permanent monument containing a seven-foot-tall depiction of the complete text of the Ten Commandments on the grounds of the Indiana Statehouse is "consistent with a historically sensitive understanding of the Establishment Clause," *Kennedy*, 597 U.S. at 537, requires a more fulsome record than is currently before us.

For these reasons, we GRANT the State's Rule 60 motion and shall reinstate this case on our docket, which opens the way for further proceedings.  *See Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004) ("When a district court grants a rule 60(b) motion, the effect is to vacate the previous judgment in the case.  Consequently, the previous case is reinstated and goes forward from that point.") (citation modified).  However, we hereby STAY the lifting of the permanent injunction for 45 days.  This time is intended to allow Plaintiffs to determine whether they wish to proceed with this litigation by filing an amended complaint to challenge the installation of the Ten Commandments monument under current Establishment Clause jurisprudence and standing principles, and/or whether, given the significant changes in the law, including those referenced above, the

10

complaint as originally filed remains a justiciable case or controversy under the current legal landscape.

IT IS SO ORDERED.

Date: _____5/28/2026_____        _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

STEVEN SCHROEDER
112 S. Beatty Street
Columbus, IN 47201

James A. Barta
Office of the Indiana Attorney General
james.barta@atg.in.gov

Joshua Bleisch
American Civil Liberties Union of Indiana
jbleisch@aclu-in.org

KENNETH J FALK
INDIANA CIVIL LIBERTIES UNION
1031 E WASHINGTON ST
INDIANAPOLIS, IN 46202

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

John P. Lowrey
Office of IN Attorney General
john.lowrey@atg.in.gov

Moriah O'Hare
First Liberty Institute
mohare@firstliberty.org

Stevie J. Pactor
ACLU OF INDIANA
spactor@aclu-in.org